# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
**Nashville Division**

REV. JEFFREY K. HOOD, JR., D.Min.
143 Crestview Drive
North Little Rock, Arkansas 72116          :

                       :

and          :

                       :

JOHN MICHAEL BANE # 98568          :
Riverbend Maximum Security Institution
Unit 2          :
7475 Cockrill Bend Blvd.          :
Nashville, Tennessee 37209          :

                       :

       Plaintiffs          :

                       :

        v.          :          Case Number: _____

                       :

KENNETH NELSON, individually,          :
and in his official capacity as the Warden of
Riverbend Maximum Security Institution
7475 Cockrill Bend Boulevard          :
Nashville, Tennessee 37243-0471          :

                       :

and          :          **JURY TRIAL DEMANDED**

                       :

DAVID DODSON,          :
in his individual capacity,          :
320 Sixth Avenue North          :
Nashville, Tennessee 37423-0465          :

                       :

and          :

                       :

JERRY SHRICK,          :
in his individual capacity,          :
Riverbend Maximum Security Institution
7475 Cockrill Bend Boulevard          :
Nashville, Tennessee 37243-0471          :

**Page 1 of  30**

and    :

TENNESSEE DEPARTMENT OF CORRECTION   :
320 Sixth Avenue North
Nashville, Tennessee 37423-0465   :

   :

and    :

   :

FRANK STRADA, individually, and in his official capacity
as the Commissioner of the Tennessee
Department of Correction,   :
320 Sixth Avenue North   :
Nashville, Tennessee 37423-0465   :

   :

    Defendant   :

# <u>COMPLAINT</u>

COMES NOW the Plaintiff, REV. JEFFREY K. HOOD, JR., D.Min., and JOHN MICHAEL BANE, through their attorney, Kenneth E. McPherson, and hereby sue KENNETH NELSON, individually, and in his official capacity as the Warden of the Riverbend Maximum Security Institution, DAVID DODSON and JERRY SHRICK, in their individual capacities, the TENNESSEE DEPARTMENT OF CORRECTION, and FRANK STRADA, in his official capacity as the Commissioner of the Tennessee Department of Correction, Defendants, on the following grounds:

## PARTIES

1a.  REV. JEFFREY K. HOOD, JR., D.Min., Plaintiff, is an adult male resident of the State of Arkansas.[1]

1b.  REV. HOOD is an ordained Priest of the Old Catholic Church who practices his faith and provides religious services, instruction, and guidance to prisoners throughout the United States, including prisoners condemned to death at the Riverbend Maximum Security Institution ("RMSI").

2a.  JOHN MICHAEL BANE, Plaintiff, is an adult male in the custody of the Tennessee Department of Correction housed at the Riverbend Maximum Security Institution located 7475 Cockrill Bend Boulevard, Nashville, Tennessee 37243-0471.[2]

2b.  BANE has been condemned to death by the State of Tennessee.[3]

3a.  KENNETH NELSON, Defendant, is the Warden of RMSI, a maximum security prison within TDOC.

3b.  NELSON is sued in his individual capacity by REV. HOOD and BANE for violating their constitutional rights under the First Amendment and NELSON is sued in his official capacity by BANE pursuant to the Religious Land Use and

---

[1]  Plaintiff Hood will be referred to as "REV. HOOD." The Tennessee Department of Corrections will be referred to as "TDOC."  The other individual parties will be referred to by their surname after they have been fully identified.

[2]  The Tennessee Department of Corrections will be referred to as "TDOC."

[3]  BANE's execution is not inevitable; he  maintains his innocence and there is a recent DNA report that supports his innocence.  However, the Court must adjudge this civil action in accordance with the status of BANE's criminal case.

Institutionalized Persons Act of 2000 ("RLUIPA"), codified at 42 U.S.C. §§ 2000cc, et seq.

4a. DAVID DODSON, Defendant, is the Director of Religious and Volunteer Services, an organization within TDOC, responsible for overseeing and evaluating all religious activities within TDOC and, as such, DODSON serves as a member of the "Religious Activities Committee" which has responsibility for review and approval of religious accommodation requests.

4b. DODSON is sued in his individual capacity by BANE for violating BANE's constitutional rights under the First Amendment.

5a. JERRY SHRICK, Defendant, was at all times relevant to Plaintiffs' allegations, the Chaplain at RMSI and, as such, SHRICK served as the Volunteer Coordinator for outside clergy who provide religious services, instruction, and guidance to prisoners at RMSI.

5b. SHRICK is sued in his individual capacity by BANE for violating BANE's constitutional rights under the First Amendment.

6. The TENNESSEE DEPARTMENT OF CORRECTION (TDOC), Defendant, is a "government," as that term is defined by 42 U.S.C. §2000cc-5(4)(A), for purposes of BANE's claims under RLUIPA.

7a. FRANK STRADA, Defendant, is the Commissioner of the Tennessee Department of Correction and, as such, STRADA, establishes and enforces policies affecting prisoners at RMSI and other TDOC institutions.

7b.     STRADA is sued in his official capacity, including on behalf of STRADA's predecessors, successors, agents and employees, by HOOD for violating HOOD's constitutional rights under the First Amendment and STRADA is sued in his individual capacity by BANE pursuant to RLUIPA.

## **NATURE OF ACTION**

8.  This civil action seeks to vindicate and enforce the Plaintiffs' individual and constitutionally protected rights to freely exercise their religious faith, particularly in the context of the Sacrament of Confession (one of the seven Tenets of the Old Catholic Faith), notwithstanding BANE's incarceration and HOOD's negative reputation among Tennessee prison officials as a prisoner advocate.[4]

9.  BANE seeks relief through the Religious Land use and Institutionalized Persons Act of 2000, codified at 42 U.S.C.§2000cc et seq.; and the Civil Rights Act of 1871, codified at 42 U.S.C. §1983, for Defendants' violations of BANE's rights protected by the Free Exercise Clause of the First Amendment made applicable to State action by the Fourteenth Amendment.

10.  HOOD seeks relief through the Civil Rights Act of 1871, codified at 42 U.S.C. §1983, and the Free Exercise Clause and the Freedom of Assembly Clause of the First Amendment, applicable to State action by the Fourteenth Amendment.

---

[4] HOOD contends that his negative reputation among Tennessee prison officials is based on HOOD expressing his personal opinions about the death penalty and abortion and assembling with like-minded persons to express those opinions in public fora.

11.    Both Plaintiffs seek declaratory and injunctive relief requiring the Defendants to permit confidential communications between the Plaintiffs in accordance with the historical, authentic, and mandatory teachings of their religion.

12.    Plaintiffs also seek, where permitted by law, a monetary award against the Defendants for individual damages and an award of attorney's fees and litigation costs where authorized by statute or other law.

13.    Defendants NELSON, DODSON, and SHRICK made the decisions and committed the acts alleged below that deprived HOOD and BANE their First Amendment Rights to free exercise of religion and HOOD's right of free speech and association.

14.    Defendant STRADA made the decisions and committed the acts alleged below that deprived BANE his rights under RLUIPA and his First Amendment Right to free exercise of religion.

## JURISDICTION AND VENUE

15.    The United States District Court for the Middle District of Tennessee has original federal question jurisdiction, pursuant to 28 U.S.C. §1331, over BANE's claims under the United States Constitution and RLUIPA.

16.    The United States District Court for the Middle District of Tennessee has federal question jurisdiction, pursuant to 28 U.S.C. §1343, over Plaintiffs' claims regarding the deprivation, under the color of State Law, of rights secured by the First

and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

17. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1), because each of the Defendants resides within it and all Defendants are residents of Tennessee.

18. Venue is also proper in this District. pursuant to 28 U.S.C. § 1391(b)(2), because TDOC's policies, and the Defendants' acts enforcing those policies and violating Plaintiffs' federally protected rights, occurred in this District. Additionally, the records of TDOC pertaining to actions affecting the Plaintiffs' rights are located in Nashville, Tennessee.

19. The Court has personal jurisdiction over the Defendants because each Defendant has sufficient minimum contacts with the forum and will be served process within the forum in accordance with Fed. R. Civ. P. 4(e).

20. Plaintiffs' claims for declaratory relief are sought under 28 U.S.C. §§ 2201(a) and 2202, Rule 57 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of the Court.

21. Plaintiffs seek permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §1343(a)(3) and (4), and by the general, legal, and equitable powers of this Court.

22. Plaintiffs' claims for attorney's fees and costs are predicated upon 42 U.S.C. §§1988 and 2000cc-2(d) which authorize the award of attorneys' fees and

costs to parties who prevail on claims brought under 42 U.S.C. §1983 and RLUIPA, respectively

## FACTS PERTAINING TO PLAINTIFFS' EXHAUSTION OF ADMINISTRATIVE REMEDIES

23. On or about April 25, 2025, REV. HOOD made a formal written request to serve as a spiritual advisor and Outside Clergy of BANE and he has verbally made the same requests to SHRICK on other occasions.[5]

24. REV. HOOD'S APPLICATION provided all information necessary for the Defendants to consider and approve REV. HOOD as a spiritual advisor and Outside Clergy to BANE, including:

(a) the nature of their shared religion (Old Catholic Church);

(b) the goal of the parties (BANE's desire to achieve penitence and eternal life through the Plaintiffs' shared religion);

(c) the religious activities that REV. HOOD sought to provide to BANE (religious education, study, counseling, prayer, worship, and sacraments) to facilitate BANE's religious goals;

(d) the historical nature of the Sacrament of Confession to the Plaintiffs' religion (instituted by Christ);

---

[5] REV. HOOD's correspondence will hereafter be referred to as the "APPLICATION."

(e) the imperative nature of the Sacrament of Confession to the Plaintiffs' religion (receiving the Sacrament of Confession is a required exercise to achieve penitence and eternal life); and

(f) the manner through which the Sacrament of Confession must be performed according to the Plaintiffs' religion. (Confession can only be performed after appropriate, sincere, and thorough spiritual counseling and prayer conducted in private exclusively between priest and penitent.)

25. REV. HOOD'S APPLICATION informed the Defendants that the Plaintiffs' ability to exercise their religion through the Sacrament of Confession, and thereby achieve BANE's goal of penitence and eternal life before his execution, was an essential tenet of the Plaintiffs' religion.

26. On or about May 2, 2025, BANE made a formal request to have REV. HOOD serve as his spiritual advisor and Outside Clergy using the "Religious Accommodations Request" form (CR-3735) required by the TDOC.[6]

27. BANE's REQUEST provided all information necessary for the Defendants to consider and approve REV. HOOD as BANE's spiritual advisor and Outside Clergy, including:

(a) the religion that BANE shares with REV. HOOD (Old Catholic Church);

(b) BANE's religious goal (to achieve penitence and eternal life through the religion he shared with, and sought guidance from, REV. HOOD);

---

[6] BANE's correspondence will hereafter be referred to as the "REQUEST."

(c) religious services BANE seeks from REV. HOOD (such as religious education, study, counseling, prayer, worship, and sacraments);

(d) BANE's desire to participate in the Sacrament of Confession;

(e) the imperative nature of the Sacrament of Confession to BANE's religion (the Sacrament of Confession is a required exercise to achieve penitence and eternal life); and

(f) the manner through which the Sacrament of Confession must be performed according to BANE's religion (Confession can only be performed after appropriate, sincere, and thorough spiritual counseling and prayer conducted in private exclusively between priest and penitent).

28. BANE's REQUEST also informed the Defendants of his emergent need to qualify for, and benefit from, the Sacrament of Confession since he has been condemned to death by the State of Tennessee.

29. BANE's REQUEST also sought permission to have REV. HOOD accompany BANE in the death chamber during BANE's execution and transition into eternal life.

30. The Defendants did not respond to REV. HOOD's APPLICATION, but SHRICK had previously expressed to REV. HOOD that REV. HOOD was *persona non grata* because of (1) REV. HOOD's political activism outside of REV. HOOD's

spiritual work within TDOC, (2) REV. HOOD's opinion on abortion rights, and (3) REV. HOOD's views on homosexuality. [7]

31.  The Defendants did not respond to BANE's REQUEST within the time limit established by the TDOC policy regarding prisoner grievances, but they ultimately denied BANE's REQUEST on September 26, 2025, thereby exhausting BANE's administrative remedies.

## ADDITIONAL FACTS:

32.  The religion of the Old Catholic Church has seven fundamental religious tenets ("Sacraments") that were instituted by Jesus Christ: Baptism, Confirmation, Eucharist, Penance (Confession), Anointing of the Sick, Holy Orders, and Matrimony.

33.  The seven sacraments of the Old Catholic Church represent channels through which God's grace is experienced by individual parishioners, such as BANE.

34.  The seven sacraments of the Old Catholic Church are essential religious exercises to the spiritual life of Catholics.

35.  The religion of the Old Catholic Church restricts the Sacrament of Confession to parishioners who seek absolution by the Church.

---

[7] Since REV. HOOD and BANE seek parallel relief, the Defendants' final denial of BANE's REQUEST on September 26, 2025, effectively operated as a denial of REV. HOOD's APPLICATION.

36. REV. HOOD has been a spiritual advisor to many prison inmates for 13 years, including numerous prisoners who have been condemned to death by various States of the Union.[8]

37. The religion of the Old Catholic Church requires the Sacrament of Confession to be administered only to parishioners who sincerely believe in God, Jesus as Savior, and eternal life with God, and who sincerely repent their sins based on those beliefs.

38. REV. HOOD's experience with condemned inmates has reinforced his theological and professional opinion that death row inmates need a structured course of spiritual nurturing, and counseling, and prayer to seek meaningful absolution before REV. HOOD is permitted by his religion to administer the Sacrament of Confession.

39. REV. HOOD sincerely believes that his religious faith and duty as a priest of the Old Catholic Church mandates, as a prerequisite to administering the Sacrament of Confession, that he determine whether a prisoner fully and sincerely appreciates the purpose and benefit of penitence.

40. REV. HOOD sincerely believes that his religious faith and duty as a priest of the Old Catholic Church mandates, as a prerequisite to administering the Sacrament of Confession, that he determine whether a prisoner sincerely feels and

---

[8] REV. HOOD has accompanied 10 prisoners into the death chamber during executions that occurred in Texas, Oklahoma, Alabama, Florida and Missouri.

expresses true remorse to God, to his own family, and to the family of his victims during the religious process of absolution.

41. The religion of the Old Catholic Church requires REV. HOOD to communicate in private with a parishioner seeking absolution through the Sacrament of Confession.

42. The religion of the Old Catholic Church requires REV. HOOD to administer the Sacrament of Confession to a penitent in private and to forever keep confidential all communications between himself and the penitent.

43. According to REV. HOOD's religion, the Sacrament of Confession is, by its very nature, in conjunction with the obligations and vocation of ordained priests, inviolable, and as such cannot be broken under penalty of immediate removal of the priest from Holy Orders and eternity condemned to Hell.

44. According to REV. HOOD's religion, the Code of Canon Law forbids priests from divulging information received in confession, subject to the penalty of excommunication by a priest who violates said canon; the soul of a priest who violates the sanctity and confidence of the confessional is forever removed from the care of God.

45. According to REV. HOOD's religion, the clergy-penitent privilege is the recognition of the proper relationship between church and state and the constitutionally protected right to free exercise of religion and, as such, the government has no right to encroach upon this sacred communication and a Catholic

Priest must advocate for this protection, not only for himself as a validly ordained priest, but for people of all faiths.

46. Some of the sins for which condemned prisoners seek to repent and receive absolution with the assistance of REV. HOOD include criminal acts that are (1) still the subject of post-conviction litigation, and (2) involve conduct for which criminal liability has not previously been charged and prosecuted.

47. Some of the sins for which condemned prisoners seek to repent and receive absolution with the assistance of REV. HOOD include violations of prison rules that could expose the prisoner to institutional punishment.

48. Some of the sins for which condemned prisoners seek to repent and receive absolution with the assistance of REV. HOOD include a breach of informal prison decorum or trust among prisoners that could expose the prisoner to retaliation by other prisoners if the conduct is disclosed by TDOC agents or employees.

49. The TDOC, STRADA, and NELSON restrict communications between spiritual advisors, including REV. HOOD, and condemned prisoners, including BANE, to recorded phone lines which can be intercepted by TDOC agents and employees or replayed by persons granted access by TDOC.

50. The TDOC restricts in-person communications between spiritual advisors, including REV. HOOD, and condemned prisoners, including BANE, to areas where it is impossible to prevent other prisoners, visitors, guards, or TDOC staff from hearing communications between a spiritual advisor and prisoner, thereby risking

disclosure of conduct by the prisoner that could subject him to criminal prosecution, institutional punishment, or retaliation by other prisoners.

51. BANE has learned through his religion that the Sacrament of Confession is an essential religious exercise of his spiritual life and that he cannot be absolved of his sins and experience eternal life upon his execution by the State of Tennessee unless he sincerely confesses all of his sins to GOD in accordance with the mandates of his religion.

52. BANE seeks REV. HOOD to serve as his spiritual advisor so that BANE can seek absolution of his sins and eternal life upon his execution by the State of Tennessee.

53. BANE seeks REV. HOOD to serve as his spiritual advisor because BANE deeply respects REV. HOOD, shares REV. HOOD's beliefs, and trusts REV. HOOD to keep BANE's statements in confidence forever.

54. BANE will be executed by the State of Tennessee before, and without, the free exercise of his religion in the form of the Sacrament of Confession unless the Court grants BANE and REV. HOOD the declaratory and injunctive relief as prayed in this Complaint.

55. The Chaplain and spiritual advisors currently available to BANE at TDOC cannot provide BANE the free exercise of his religion, at least insofar as the Sacrament of Confession and the religious beliefs that BANE and REV. HOOD sincerely share.

56. Defendants NELSON, DODSON, SHRICK, and STRADA were acting under color of law at all times relevant to the allegations in this Complaint.

## COUNT 1

### Section 1983 Violation based on Free Exercise Clause

**(Plaintiffs REV. HOOD and BANE**
**v.**
**Defendants NELSON, DODSON, and SHRICK)**

The Plaintiffs incorporate here all of the allegations made above and allege further:

57. STRADA adopted and enforces, on behalf of TDOC, a policy of making all communications between spiritual advisors and condemned prisoners non-private and non-confidential; such communications are subject to interception, recording, and dissemination by TDOC agents and employees.

58. NELSON adopted and enforces at RMSI a policy of making communications between spiritual advisors and condemned prisoners non-private and non-confidential; such communications are subject to interception, recording, and dissemination by RMSI agents and employees.

59. STRADA's and NELSON's policies precluding private and confidential communications between spiritual advisors, including REV. HOOD, and prisoners, including BANE, infringe on Plaintiffs' respective rights to the free exercise of their religion because, by threat of sanctions against them and disclosure of information that may subject BANE to criminal or institutional punishment and retaliation by

other prisoners, neither Plaintiff can participate in the Sacrament of Confession according to the dictates of their religion.

60. No legal justification exists for STRADA's and NELSON's restrictive policies that infringe on Plaintiffs' free exercise of religion because the government's interest (presumably prison security) can be achieved in a less restrictive manner at minimal cost to TDOC with little, if any, impact on the work of prison guards and the safety of other prisoners.

61. STRADA's and NELSON's violation of REV. HOOD's civil rights, specifically his right to the free exercise of religion protected by the First Amendment, has directly and proximately deprived REV. HOOD the enjoyment and benefit of his religion; caused REV. HOOD monetary damages in the form of lost donations that he would use to further his free exercise of his religion and sustain himself; loss of parishioners whom REV. HOOD would share religious experiences and benefits; and caused him various forms of mental suffering, emotional distress, nervousness, indignity, humiliation, insult, embarrassment, and inconvenience.

62. STRADA's and NELSON's violation of BANE's civil rights, specifically his right to the free exercise of religion protected by the First Amendment, has directly and proximately deprived BANE the enjoyment and benefit of his religion; caused BANE great fear and anguish because he will not be absolved from his sins or achieve eternal life unless he receives the Sacrament of Confession in accordance with the dictates of his religion; and caused BANE other forms of mental suffering,

Case 3:26-cv-00606    Document 1    Filed 05/08/26    Page 17 of 30 PageID #: 17

emotional distress, nervousness, indignity, humiliation, insult, embarrassment, and inconvenience.

## COUNT 2

**Section 1983 Violation based on Equal Protection Clause**

**(Plaintiffs REV. HOOD and BANE**
**v.**
**Defendants NELSON, DODSON, and SHRICK)**

The Plaintiffs incorporate here all of the allegations made above and allege further:

63. Defendants NELSON, DODSON, and SHRICK[9] violated REV. HOOD's and BANE's civil rights, as described in this Complaint, based on Plaintiffs' religion.

64. The ADMINISTRATORS intentionally treated REV. HOOD and BANE differently from other similarly situated persons because other professional advisors are permitted to communicate with other prisoners in private without their statements being intercepted, recorded, or disseminated.

65. There is no rational basis for the difference in treatment of REV. HOOD and BANE from other similarly situated persons.

66. The ADMINISTRATORS' unequal treatment of REV. HOOD, as described in this Complaint, directly and proximately caused REV. HOOD the damages described above in Paragraph 61.

---

[9] When these three Defendants are referred to collectively, the will be identified as the "ADMINISTRATORS."

67. The ADMINISTRATORS' unequal treatment of BANE, as described in this Complaint, directly and proximately caused BANE the damages described above in Paragraph 62.

## REV. HOOD'S PRAYER FOR RELIEF UNDER COUNTS 1 AND 2

Plaintiff REV. JEFFREY K. HOOD, JR., D.Min, seeks the following relief:

a. Entry of judgment in his favor against Defendants KENNETH NELSON, DAVID DODSON, JERRY SHRICK, and FRANK STRADA (in his individual capacity), jointly and severally;

b. Temporary and Permanent Injunctive relief directing said Defendants to (1) refrain from acts infringing on REV. HOOD's right to free exercise of religion by allowing REV. HOOD to communicate with Plaintiff BANE (and other prisoners condemned to death upon proof that such other prisoner is likewise sincerely exercising his right to free exercise of religion) in confidence for the purpose of administering the Sacrament of Confession and without the Plaintiffs' communications being intercepted or recorded for review by any person (absent the issuance of a court order based on exigent circumstances or other lawful basis); and (2) allow REV. HOOD to serve as the spiritual advisor of BANE (and other prisoners condemned to death upon proof that such other prisioner is likewise sincerely exercising his right to free exercise of religion) absent a showing that REV. HOOD is not qualified on grounds unrelated to his beliefs and expressions regarding the death penalty, abortion and homosexuality.

c.  Declaratory Relief restoring and enforcing REV. HOOD's right to free exercise of religion;

d.  Monetary Damages of $1,000,000.00 for economic losses;

e.  Monetary Damages of $10,000,000.00 for non-economic injuries;

f.  Attorney's fees permitted by statute;

g.  Costs of this action;

and

h. Other relief as may be appropriate to prevent the Defendants from infringing on REV. HOOD's constitutional rights and to effectuate the purpose of 42 U.S.C. §1983.

### BANE'S FOR RELIEF UNDER COUNTS 1 AND 2

Plaintiff JOHN MICHAEL BANE seeks the following relief:

a.  Entry of judgment in his favor against Defendants KENNETH NELSON, DAVID DODSON, JERRY SHRICK, and FRANK STRADA (in his individual capacity), jointly and severally;

b.  Temporary and Permanent Injunctive relief directing said Defendants to (1) allow REV. HOOD to serve as the spiritual advisor of BANE and any other inmate absent a showing that REV. HOOD is not qualified on grounds unrelated to his beliefs and expressions regarding the death penalty and abortion; and (2) refrain from acts infringing on the Plaintiff's rights to free exercise of their religion by allowing Plaintiffs to communicate to each other in confidence for the purpose of the

Sacrament of Confession and without their communications being recorded for review by any person absent the issuance of a court order based on exigent circumstance;

    c. Declaratory Relief restoring and enforcing BANE's free exercise of religion;

    d.  Monetary Damages of $10,000,000.00 for non-economic injuries;

    e.  Attorney's fees permitted by statute;

    f.  Costs of this action;

and

    g. Other relief as may be appropriate to prevent the Defendants from infringing on BANE's constitutional rights and to effectuate the purpose of 42 U.S.C. §1983.

## COUNT 3

**Section 1983 Violation based on Freedom of Speech Clause**

**(Plaintiff REV. HOOD
v.
Defendants NELSON, DODSON, and SHRICK)**

The Plaintiff incorporates here all of the allegations made above and allege further:

68.    The ADMINISTRATORS rejected REV. HOOD's APPLICATION because REV. HOOD has expressed in the public forum his belief that capital punishment is abhorrent.

69. The ADMINISTRATORS rejected REV. HOOD's APPLICATION because REV. HOOD has expressed in the public forum an opinion on abortion and homosexuality unacceptable to Defendants.

70. The ADMINISTRATORS rejected REV. HOOD's APPLICATION because REV. HOOD has associated himself with activists who express opinions on the death penalty, abortion and homosexuality.

71. REV. HOOD's speeches, beliefs, and associations are protected by the Free Speech Clause of the First Amendment.

72. The ADMINISTRATORS violated REV. HOOD's civil rights, including his right to free speech, by rejecting REV. HOOD's APPLICATION and thereby refusing to let him serve as BANE's spiritual advisor.

73. The ADMINISTRATORS' actions against REV. HOOD would chill a person of ordinary firmness from continuing to engage in free speech.

74. REV. HOOD's protected activity (freedom of speech) was a substantial or motivating factor in the ADMINISTRATORS' conduct.

75. The ADMINISTRATORS' violation of REV. HOOD's freedom of speech as described in this Count directly and proximately caused REV. HOOD the damages described above in Paragraph 61.

### REV. HOOD'S PRAYER FOR RELIEF UNDER COUNT 3

Plaintiff REV. JEFFREY K. HOOD, JR., D.Min, seeks the following relief:

a. Entry of judgment in his favor against Defendants KENNETH NELSON, DAVID DODSON, and JERRY SHRICK, jointly and severally;

b. Temporary and Permanent Injunctive relief directing said Defendants to grant REV. HOOD's APPLICATION and allow REV. HOOD to serve as a spiritual advisor to BANE and (other prisoners sincerely exercising their right to free exercise of religion who have named REV. HOOD as their spiritual advisor within TDOC rules) notwithstanding REV. HOOD's free speech (and non-verbal expression, such as marching or waiving signs) on the issues of the death penalty, abortion and homosexuality.

c. Declaratory Relief finding and declaring that REV. HOOD is free to speak about the death penalty and abortion rights notwithstanding the fact that his beliefs and expressions may be different than or contrary to the Defendants' beliefs or positions on those matters of public importance;

d. Monetary Damages of $1,000,000.00 for economic losses;

e. Monetary Damages of $10,000,000.00 for non-economic injuries;

f. Attorney's fees permitted by statute;

g. Costs of this action;

and

h. Other relief as may be appropriate to prevent the Defendants from infringing on REV. HOOD's constitutionally protected freedom of speech and to effectuate the purpose of 42 U.S.C. §1983.

## COUNT 4

### Section 1983 Violation based on Freedom of Association

**(Plaintiff REV. HOOD
v.
Defendants NELSON, DODSON, and SHRICK)**

The Plaintiff incorporates here all of the allegations made above and allege further:

76. The ADMINISTRATORS rejected REV. HOOD's APPLICATION because REV. HOOD has associated and assembled with others in the public forum who share REV. HOOD's belief that capital punishment is abhorrent.

77. The ADMINISTRATORS rejected REV. HOOD's APPLICATION because REV. HOOD has associated and assembled with others in the public forum who share REV. HOOD's belief that abortion should not be prohibited in every circumstance.

78. The ADMINISTRATORS rejected REV. HOOD's APPLICATION because REV. HOOD has associated and assembled with activists who express opinions on the death penalty, abortion and homosexuality.

79. REV. HOOD's speeches, beliefs, and associations are protected by the Free Speech Clause of the First Amendment.

80. The ADMINISTRATORS violated REV. HOOD's civil rights, including his right to freedom of association and assembly, by rejecting REV. HOOD's APPLICATION and thereby refusing to let him serve as BANE's spiritual advisor.

81. The ADMINISTRATORS' actions against REV. HOOD would chill a person of ordinary firmness from continuing to associate and assemble with persons who share his believes and seek to express those beliefs in public.

82. REV. HOOD's constitutionally protected right to freely associate and assemble with like-minded persons was a substantial or motivating factor in the ADMINISTRATORS' conduct.

83. The ADMINISTRATORS' violation of REV. HOOD's freedom of association and assembly, as described in this Count, directly and proximately caused REV. HOOD the damages described above in Paragraph 61.

### REV. HOOD'S PRAYER FOR RELIEF UNDER COUNT 4

Plaintiff REV. JEFFREY K. HOOD, JR., D.Min, seeks the following relief:

a. Entry of judgment in his favor against Defendants KENNETH NELSON, DAVID DODSON, and JERRY SHRICK, jointly and severally;

b. Temporary and Permanent Injunctive relief directing said Defendants to grant REV. HOOD's APPLICATION and allow REV. HOOD to serve as an Outside Spiritual Advisor to BANE and (other prisoners sincerely exercising their right to free exercise of religion who have named REV. HOOD as their Spiritual Advisor within TDOC rules) notwithstanding REV. HOOD's association and assembly with others who express opinions on the issues of the death penalty, abortion and homosexuality.

c. Declaratory Relief finding and declaring that REV. HOOD is free to associate and assemble with others who speak about the death penalty, homosexuality

and abortion rights notwithstanding the fact that their beliefs and expressions may be different than or contrary to the Defendants' beliefs or positions on those matters of public importance;

    d.  Monetary Damages of $1,000,000.00 for economic losses;

    e.  Monetary Damages of $10,000,000.00 for non-economic injuries;

    f.  Attorney's fees permitted by statute;

    g.  Costs of this action;

and

    h. Other relief as may be appropriate to prevent the Defendants from infringing on REV. HOOD's constitutionally protected rights to associate and assemble with others speaking on controversial matters and to effectuate the purpose of 42 U.S.C. §1983.

## COUNT 5

### RLUIPA Claim Based on Free Exercise of Religion

**(Plaintiff BANE**
**v.**
**Defendants TDOC, STRADA and NELSON)**

The Plaintiff incorporates here all of the allegations made above and allege further:

84.    The TDOC has a policy of monitoring and recording telephone communications between prisoners and persons outside the prison.

85.  The content of prisoner telephone communications is disseminated by, or at the direction. of TDOC, STRADA and NELSON, to third parties, including, law enforcement authorities upon request and in response to court subpoenas.

86.  TDOC's telephone communication policy does not provide an exception for religious communications between prisoners and their religious advisor, including ordained Priests of the Old Catholic Church.

87.  TDOC's telephone communication policy applies to inmates, such as BANES, who have been condemned to death by the State of Tennessee.

88.  BANE's pending execution by the State of Tennessee creates a finite period of time during which BANE can qualify for and receive the Sacrament of Confession from his religious advisor.

89.  BANE's pending execution by the State of Tennessee creates an immediate need for BANE to be qualify for and receive the Sacrament of Confession from his religious advisor.

90.  BANE's pending execution by the State of Tennessee creates an immediate need for BANE to communicate with his religious advisor.

91.  BANE has legal counsel in his criminal case who will likely file papers on his behalf challenging his conviction or death sentence before he is executed.

92.  BANE anticipates that the State of Tennessee will oppose any legal or factual challenge files to his conviction or death sentence.

93. Any statement BANE makes over the prison telephone system to his religious advisor during BANE's attempt to secure eternal life through the Sacrament of Confession will likely be recorded by TDOC and disseminated to counsel for the State of Tennessee to use against BANE in legal proceedings relating to BANE's conviction or death sentence.

94. TDOC's telephone communication policy, adopted and enforced by STRADA through NELSON, imposes a substantial burden on BANE's religious exercise.

95. TDOC's telephone communication policy, adopted and enforced by STRADA through NELSON, imposes a substantial burden on BANE's ability to receive the Sacrament of Confession.

96. TDOC's telephone communication policy, adopted and enforced by STRADA through NELSON, imposes a substantial burden on BANE's ability to achieve penitence through religious exercise.

97. TDOC's telephone communication policy, adopted and enforced by STRADA through NELSON, imposes a substantial burden on BANE's ability to receive absolution from BANE's GOD.

98. There telephone communication policy imposed on BANE by TDOC, and enforced by STRADA through NELSON, does not serve a compelling state interest.

99. The telephone communication policy imposed on BANE by TDOC, and enforced by STRADA through NELSON, is not the least restrictive means of

furthering any conceivable compelling governmental interest asserted by the Defendants or the State of Tennessee.

100. The infringement of BANE'S free exercise of religion by TDOC, and by STRADA and NELSON acting in their official capacities, in violation of RLUIPA, has directly and proximately deprived BANE the enjoyment and benefit of his religion; great fear and anguish because he will not be absolved from his sins or achieve eternal life unless he receives he experiences the Sacrament of Confession in accordance with the dictates of his religion; and other forms of mental suffering, emotional distress, nervousness, indignity, humiliation, insult, embarrassment, and inconvenience.

### BANE'S PRAYER FOR RELIEF UNDER COUNT 5

Plaintiff JOHN MICHAEL BANE seeks the following relief:

a. Entry of judgment in his favor against Defendants TENNESSEE DEPARTMENT OF CORRECTION, and FRANK STRADA and KENNETH NELSON in their official capacities, jointly and severally;

b. Temporary and Permanent Injunctive relief directing said Defendants to (1) allow BANE to have private and confidential telephone communication with his religious advisor, REV. HOOD, and any other religious advisor approved by TDOC that BANE may in the future adopt in substitution for REV. HOOD as BANE's religious advisor; and (2) refrain from acts infringing on BANE's right to the free exercise of his religion by allowing BANE to communicate in confidence with REV.

HOOD and any other religious advisor whom BANE may substitute in the future for REV. HOOD) for the specific purpose of the Sacrament of Confession and without BANE's communications being recorded for review by any person absent the issuance of a court order based on exigent circumstances or other lawful basis;

c. Declaratory Relief restoring and enforcing BANE's free exercise of religion;

d. Attorney's fees permitted by statute;

e. Costs of this action;

and

f. Other relief as may be appropriate to prevent said Defendants from infringing on BANE's constitutional rights and to effectuate the purpose of 42 U.S.C. §1983.

Respectfully submitted,

*/s/ Kenneth E. McPherson*
Kenneth E. McPherson
P. O. Box 475
Fulton, Maryland 20759
240-432-8970 mobile
855-955-3910 fax
kemlawyer@gmail.com

*Attorney for Plaintiffs*